# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

TANNER WIGGINS, as Father and
Legal Guardian of A.W.,

     Plaintiff,

v.                                                             Case No. 3:16-cv-1142-J-32MCR

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

     Defendant.

_____

# **O R D E R**

This bad faith insurance case is before the Court on Defendant
Government Employees Insurance Company's Motion for Summary Judgment
(Doc. 48), and Motion to Strike Plaintiff's Expert, (Doc. 49). Plaintiff Tanner
Wiggins, on behalf of his minor daughter A.W., responded to both motions,
(Docs. 54, 60), to which GEICO replied, (Docs. 70, 71), and Wiggins filed sur-
replies, (Docs. 72, 73).

On May 31, 2018, the Court held a hearing on the motions, the record of
which is incorporated herein. (Docs. 78, 79). At the hearing, the Court
determined that it should wait to rule on the motions until the Florida Supreme
Court decided <u>GEICO General Insurance Co. v. Harvey</u>, No. SC17-85, 2017 WL

3484290 (Fla. June 9, 2017), an insurance bad faith case it had accepted for review. The parties had cited the District Court of Appeal case, GEICO General Insurance Co. v. Harvey, 208 So. 3d 810, 814 (Fla. 4th DCA 2017), in their briefing, and debated its importance to this case. On September 20, 2018, the Florida Supreme Court issued its opinion, reversing the Fourth DCA. Harvey v. GEICO Gen. Ins. Co., No. SC17-85, 2018 WL 4496566, at *1 (Fla. Sept. 20, 2018). On November 14, 2018, the Court reopened this case and directed the parties to file additional briefing explaining how the Florida Supreme Court's decision in Harvey impacts this case. (Doc. 82). The parties did so, (Docs. 83; 84), and this case is now ready for decision on the motions.

In this diversity case, Florida law provides the substantive law the Court applies, and in interpreting Florida law the Court is required to follow the decisions of the Florida Supreme Court. See Cote v. R.J. Reynolds Tobacco Co., 909 F.3d 1094, 1107 (11th Cir. 2018); see also Moore v. GEICO Gen. Ins. Co., No. 17-13655, 2018 WL 6602094, at *2 (11th Cir. Dec. 14, 2018) (citing Harvey for Florida's bad faith standard). Before the Florida Supreme Court's decision in Harvey, the Court likely would have granted summary judgment in favor of GEICO. However, Harvey compels the Court to deny GEICO's Motion for Summary Judgment and send the case to trial. Depending on the evidence actually adduced at trial, the Court may revisit the issues raised in the summary judgment motion at the directed verdict stage.

One of Plaintiff's experts, Michael T. Callahan, was asked to render opinions on the Claytons' (the insureds) need for personal counsel and the consequences of retaining personal counsel. (Doc. 49-3 at 3). GEICO moves to strike Callahan's testimony for four reasons: (1) his opinions are unreliable and not based on sufficient facts; (2) his testimony is not based on reliable principles or methods; (3) he did not apply reliable principles or methods to the facts of the case because his opinions regarding what personal counsel would have done are pure speculation; and (4) his opinions are not helpful to the jury because they are duplicative of and cumulative to Wiggins's other expert, Peter Knowe. (Doc. 49 at 3–5).

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires judges to act as the gatekeeper to ensure that expert testimony "is not only relevant, but reliable." <u>Daubert v. Merrell Dow Pharm., Inc</u>, 509 U.S. 579, 589 (1993); <u>see also</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999) (holding that <u>Daubert</u>'s gatekeeping obligation applies to all expert testimony). To be admissible, the proponent of the testimony, who bears the burden of demonstrating admissibility, must satisfy three requirements:

> First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be reliable as determined by a <u>Daubert</u> inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue.

<u>Arthur v. Comm'r, Ala. Dep't of Corr.</u>, 840 F.3d 1268, 1309 (11th Cir. 2016). If

the testimony satisfies these three requirements, it must then still satisfy Rule

403.[1] <u>United States v. Frazier</u>, 387 F.3d 1244, 1263 (11th Cir. 2004) (en banc).

As part of his proposed testimony on the necessity for personal counsel,

Callahan offered opinions on whether GEICO complied with its good faith

obligations.[2] His opinion on the consequences of retaining personal counsel

conclude that such counsel would have assisted the Claytons in understanding

---

[1] GEICO does not challenge Callahan's qualifications, thus, only the second and third requirements are at issue.

[2] Callahan's expert report, (Doc. 49-3), does not explicitly state that GEICO failed to comply with its good faith duties. However, the report implies such an opinion and Callahan testified in his deposition that GEICO failed to: use the same degree of care and diligence as a person of ordinary care and prudence would exercise in the management of his own business; advise of the probable outcome of the litigation; warn of the possibility of an excess judgment; and advise the insured of any steps they might take to avoid an excess judgment. (Doc. 49-4 at 10–11). At the May 31, 2018 hearing, Wiggins's counsel told the Court that Callahan would not testify to the same subject matter as Knowe—who opines on whether GEICO's actions complied with insurance industry custom and practice—and that Callahan is necessary to explain the extent of an insurers' duty to communicate with its insured and the actions personal counsel for the Claytons would have taken to facilitate settlement. (Doc. 79 at 64–65). Callahan's opinions concerning GEICO's failure to comply with its good faith duties are, thus, unimportant because they will not be the subject of his testimony. Even if they were, they would be inadmissible legal conclusions. <u>Commodores Entm't Corp. v. McClary</u>, 879 F.3d 1114, 1128 (11th Cir. 2018) ("While it is well established that a qualified expert in a civil case may offer his opinion on an 'ultimate issue' in a case, Fed. R. Evid. 704(a), experts 'may not testify to the legal implications of conduct' or 'tell the jury what result to reach.'" (quoting <u>Montgomery v. Aetna Cas. & Sur. Co.</u>, 898 F.2d 1537, 1541 (11th Cir. 1990))).

4

what was happening and likely would have facilitated a settlement within the policy limits. (Doc. 49-3 at 7–10).

An expert who relies upon his experience as the foundation of his opinions must explain how his experience supports his opinions. See Hughes v. Kia Motors Corp., 766 F.3d 1317, 1329 (11th Cir. 2014) (citing Frazier, 387 F.3d at 1265). The proponent of the expert testimony has the burden to explain how the expert's experience "led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." Frazier, 387 F.3d at 1265. The Rules do not "require[] a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 135, 146 (1997).

Callahan's opinions regarding what actions personal counsel would have taken are admissible. See Frazier, 387 F.3d at 1262. Although Callahan's report, standing alone, does not explain how his experience supports his opinions, see Frazier, 387 F.3d at 1265 (stating that proponent must explain how an expert's experience led to the conclusion reached), he testified that his opinions are based upon years of experience dealing with lawyers handling

these types of claims and the minimum competence required of those lawyers.[3] (See, e.g., Doc. 49-4 at 19). Additionally, GEICO's argument that Callahan's opinion concerning the actions of personal counsel are inadmissible because they are based on assumptions, (Doc. 49 at 18–19), goes to weight and not admissibility, Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1194 (11th Cir. 2011). An expert can make reasonable assumptions in formulating his opinions, Maiz v. Virani, 253 F.3d 641, 666–67 (11th Cir. 2001), and those assumptions can be attacked through cross-examination and the presentation of contrary evidence, Rosenfeld, 654 F.3d at 1194. Therefore, Callahan's opinions concerning the actions a reasonably competent personal counsel would have taken are reliable and based upon Callahan's comparison of the facts with his extensive experience.[4] He may not, however, opine that GEICO acted in bad faith or failed to meet its good faith obligations.

Accordingly, it is hereby

**ORDERED:**

---

[3] In his deposition and CV, Callahan outlines his experience dealing with insurance cases, including assisting insurance companies with claims practices and procedure and developing strategies for dealing with bad faith cases. (Doc. 49-4 at 7). Additionally, he has been a defense lawyer in hundreds of bad faith cases and has taught insurance bad faith seminars to attorneys in Florida. (Doc. 49-4 at 7).

[4] Because Wiggins told the Court that Callahan will not testify about the same subject matter as its other expert, Knowe, GEICO's Rule 403 cumulative argument is moot. (Doc. 49 at 21).

1. Defendant Government Employees Insurance Company's Motion for Summary Judgment (Doc. 48), is **DENIED**.

2. Defendant Government Employees Insurance Company's Motion to Strike Plaintiff's Expert, (Doc. 49) is **DENIED** as stated herein.

3. Not later than **February 22, 2019**, the parties shall file a joint notice stating whether further mediation would be beneficial.

4. This case is set for trial. The following deadlines apply:

a. Motions in limine and joint final pretrial statement due by **May 1, 2019**. Responses to motions in limine due not later than **May 8, 2019**.

b. Final Pretrial Conference will be held on **May 22, 2019 at 10:00 A.M.** in Courtroom 10D, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202.

c. The trial term begins **June 3, 2019 at 9:00 A.M.** in Courtroom 10D, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202.

**DONE AND ORDERED** in Jacksonville, Florida this 28th day of January, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies to:

Counsel of record